UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT
CASE NO. _____

KIMBERLY MYERS                                                    PLAINTIFF

v.                                      **COMPLAINT**

CITY OF FRANKFORT
Serve: Layne Wilkerson
      Mayor
      315 West Second Street
      Frankfort, Kentucky 40601

and

DUSTIN BOWMAN, in his individual capacity
Serve: Frankfort Police Department
      300 West Second Street
      Frankfort, Kentucky 40601

and

LARRY G. CURTIS, in his individual capacity
Serve: 404 Ewing Street
      Frankfort, Kentucky 40601                          DEFENDANTS

## INTRODUCTION

This is an action brought under 42 U.S.C. § 1983 and the laws of the Commonwealth of Kentucky to hold former Frankfort Police Department detective Larry "Guss" Curtis accountable for numerous violations of Plaintiff Kimberly Myers' constitutional rights. It is also brought against the policymakers, the City of Frankfort and Frankfort Police Department Chief Dustin Bowman, for their failure to properly supervise and correct a pattern of wrongdoing.

Plaintiff Kimberly Myers is a 46-year-old mother who has a career in corporate accounting. On July 7, 2023, Kimberly was spending a leisurely day at her home in Frankfort with her teenage daughter, M.H. Kimberly had just gotten out of the shower when she heard a knock at her door. Kimberly answered the door—still dressed only in a towel—and saw then-detective Guss Curtis with a group of police officers and social workers. Curtis demanded that Kimberly allow him to speak with M.H. When Kimberly merely asked Curtis if he had a warrant to enter her home, Curtis responded "no" and immediately shoved the door into Kimberly—injuring her—and unlawfully invading into her home. Enraged by Kimberly's assertion of her constitutional rights, Curtis directed she be placed in handcuffs and arrested her without probable cause.

As he twisted her arm behind her back—with the towel falling off of her—Curtis glibly told Kimberly: "If it's illegal, file a civil lawsuit."

Kimberly now turns to this Court for such relief.

## JURISDICTION AND VENUE

1. This Complaint seeks remedies pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights as well as violations of the laws of the Commonwealth of Kentucky.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Supplemental jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Kimberly Myers, is a resident of Franklin County, Kentucky at all times relevant hereto.

## Defendant City of Frankfort

6.   Defendant, City of Frankfort, is a duly organized city within the Common-
     wealth of Kentucky, and at all times relevant hereto, was responsible for the
     establishment of policies, practices, customs, and procedures of the Frankfort
     Police Department.

7.   Defendant, City of Frankfort, was responsible for the employment, training,
     supervision, and conduct of, its Chief of Police Dustin Bowman, and the offic-
     ers and employees of the Frankfort Police Department.

8.   At all times relevant herein, the City of Frankfort acted under the color of
     the laws, statutes, and regulations of the Commonwealth of Kentucky.

## Defendant Chief Dustin Bowman

9.   Defendant, Chief Dustin Bowman, at all times relevant herein, was an em-
     ployee of the City of Frankfort and its agency, the Frankfort Police Depart-
     ment.

10.  As Chief, Defendant Bowman was responsible for the establishment of poli-
     cies, practices, customs, and procedures of the Frankfort Police Department.

11.  As Chief, Defendant Bowman was also responsible for the training, supervi-
     sion, and conduct of Defendant Larry G. Curtis, as well as all other members
     of the Frankfort Police Department.

12.  Defendant Bowman was also responsible for the hiring, placement, and re-
     tention of Defendant Larry G. Curtis.

## Defendant Larry G. Curtis

13.  Defendant, Larry G. Curtis, at all times relevant herein, was an employee of
     the City of Frankfort and its agency, the Frankfort Police Department.

14.  Prior to being employed by the Frankfort Police Department, Curtis was em-
     ployed by the Georgetown Police Department.

—3—

15. Curtis resigned from the Georgetown Police Department on February 1, 2017, two days after being served with a "48-hour notice" regarding numerous acts of misconduct. The notice specifically stated:

> Specifically, it is alleged that you and another officer while off duty.
>
> 1. Created a disturbance at Old House Wine and Spirits that resulted in a citizen calling 911 to request check on the owner / premises causing a police response.
>
> 2. That you returned to Old House Wine and Spirits after the police response and confronted a citizen, accusing her of being the originator of the 911 call and threating legal consequences for falsely reporting an incident.
>
> 3. That in the course of the above conduct you gave a false name "Bobby Jenkins" to the citizen.
>
> 4. Created a disturbance at Applebee's restaurant by engaging in a verbal confrontation with another patron which lead to a physical altercation and caused a police response.

16. Prior to his employment with the Frankfort Police Department, Curtis had amassed a disciplinary history that clearly demonstrated his lack of fitness for any employment that vested him with the power and authority to exercise force against, arrest, imprison, and/or prosecute American citizens.

17. Despite Curtis' history of misconduct, the Frankfort Police Department hired Curtis in 2018.

18. Curtis' unsuitability for police work became evident to the Frankfort Police Department almost immediately when, on August 12, 2018, he unlawfully entered the home of Kiante Russell and Shian Washington. Curtis tazed and beat Russell before arresting both of them—all without any probable cause.

19. This manifested into a lawsuit for the police department in *Russell v. City of Frankfort, et al.,* 3:20-cv-00040-GFVT-EBA (E.D.K.Y. 2020). This suit was settled before trial.

20. Curtis received no additional training after this lawsuit. He was permitted to remain on the force and given no punishment for unlawfully entering, attacking, and arresting a law-abiding Frankfort resident. Instead, the

Frankfort Police Department promoted Curtis to detective and assigned him to work with particularly vulnerable populations such as victims of sexual crimes, children, and people with mental health issues.

21. During his tenure with the Frankfort Police Department, Curtis amassed numerous citizen complaints and 48-hour notices. The Department failed to adequately address these issues—likely because at this time Curtis amassed local notoriety for his high number of child abuse and sexual assault arrests.

22. Many of these arrests resulted in charges that were dismissed for lack of evidence or significantly amended down. Curtis' habit of significantly overcharging meant that many people spent substantial time in custody and had their families torn apart before their charges were dropped, as was the case with Kimberly and her family.

23. As his local notoriety grew, Curtis grew a propensity to manipulate witnesses and lie to try to support his cases.

24. Despite his issues, the Frankfort Police Department saw fit to award Curtis its "2022 Officer of the Year Award" due to his high volume of arrests.

25. Curtis developed relationships with local CPS workers and demanded to become aware of all new CPS investigations. On multiple occasions, he demanded entry into Frankfort residential houses as a part of "assisting" a CPS investigation.

26. Internally, the Frankfort Police Department was aware of Curtis' misconduct. In 2023, Curtis' supervisor specifically stated in his performance evaluation that he had "a tendency to push to [sic] quickly to a conclusion" and that he should "take note not only of facts that lead to the believed conclusion but also those that lead elsewhere."

## FACTS

*Kimberly's Unwavering Support for her Daughter*

27. The leadup to Kimberly's confrontation with Curtis began on July 6, 2023.

28. Kimberly's fourteen-year-old daughter, M.H., suffers from significant mental health issues and has been involuntarily hospitalized many times in her life. She has demonstrated violent tendencies and has been arrested twice for domestic violence against Kimberly.

29. Despite these challenges, Kimberly has never wavered in her support for her child—ensuring that she has all the medical resources and support available to her that she can provide.

30. On July 6, 2023, M.H. punched Kimberly in the face and proceeded to attack Kimberly following an argument concerning M.H. breaking into Kimberly's locked bedroom.

31. Following the advice of M.H.'s therapist, Kimberly restrained M.H. by holding her arms above her head and hovering over her body on the ground until M.H. calmed down.

32. Kimberly's twenty-three-year-old daughter Celeste witnessed this incident and saw that Kimberly acted appropriately—namely that the appropriate restraint was used and that M.H. wasn't hurt by Kimberly. Celeste witnessed M.H. have a panic attack and bang the back of her head into the ground out of frustration.

33. Later in the day, Kimberly took M.H. to her therapist.

34. Both Kimberly and M.H. spoke to the therapist about the events that occurred earlier. While alone with the therapist, M.H. claimed that Kimberly's restraint of her was abusive.

35. As the therapist is a mandated reporter, she contacted DCBS and relayed M.H.'s allegations.

*The Social Worker Response*

36. The following day, July 7, a social services worker with DCBS arrived at Kimberly's home while she was away and spoke with M.H.

37. M.H. reported that she was "okay and safe."

38. Kimberly returned home during the worker's visit. The worker told Kimberly that there was a report concerning possible abuse of M.H. Kimberly briefly explained M.H.'s attack, the restraint, and M.H.'s mental health history.

39. Apparently satisfied by her explanation, the worker agreed to meet with Kimberly the following week to discuss services that DCBS could provide to help M.H. with her mental health issues and to help Kimberly effectively manage them.

40. Before leaving, the worker asked that Kimberly sign a "Prevention Plan."

41. Kimberly declined to sign the prevention plan when she saw that it mentioned "physical abuse." She did, however, tell the worker that she would follow the terms in the document.

*The Attack, Invasion, and Unlawful Arrest of Kimberly*

42. A few hours later, then-detective Curtis went to Kimberly's residence along with two other social workers and a uniformed police officer.

43. Kimberly—having just taken a shower—was only dressed in a bath towel.

44. Kimberly cracked open the door to see who it was.

45. Curtis demanded to see M.H. to ensure that she was safe. Kimberly, knowing that her daughter had twice previously been arrested for domestic violence against her, responded by asking if Curtis had a warrant.

46. Almost immediately Curtis became enraged. He stated that "no" he didn't have a warrant and forced the door open and into Kimberly's body.

47. Curtis—now positioned in the door frame to keep Kimberly from closing it—stated that he believed M.H. was injured and that he needed to see her.

48. M.H., who was standing at the top of the staircase, could be seen and heard by Curtis and Kimberly.

49. Curtis—still not satisfied—forced the door completely open into Kimberly's body and entered the house completely.

50. Curtis then twisted Kimberly's arm behind her back and directed the assisting officer to place her in handcuffs.

51. While placing her under arrest, Kimberly protested that his actions were illegal.

52. Curtis responded, "If it's illegal, file a civil lawsuit."

53. Curtis never attempted to speak with Kimberly or her twenty-three-year-old daughter who witnessed the events before he determined to arrest Kimberly.

54. Curtis arrested Kimberly and charged her with Obstructing Governmental Operations, Assault 4th Degree (Domestic Violence), and Strangulation 1st Degree.

55. EMS was called out to render aid to Kimberly due to Curtis slamming the door against her, causing visible injury.

56. Following the arrest, Curtis knowingly and purposefully misrepresented the facts in his Uniform Citation.

57. As a foreseeable consequence of his actions, Frankfort's local newspaper—The State Journal—published the false information contained in the Uniform Citation, along with her mugshot.

https://www.state-journal.com/crime/local-mother-charged-with-strangling-assaulting-teen/article_d2cd3cfe-1fec-11ee-adc5-a3f455066c35.html

## Local mother charged with strangling, assaulting teen

CHANDA VENO
Jul 11, 2023

A Frankfort mother is facing several charges after she allegedly strangled and assaulted her 14-year-old daughter on Thursday.

Officers with the Frankfort Police Department and a representative from Child Protective Services (CPS) were attempting to conduct a wellbeing check at **Kimberly Myers**' Schenkel Lane residence when she reportedly closed the door on them.



When law enforcement made entry into the home, Myers' allegedly proceeded to stand in the way hindering and obstructing the investigation.

According to her arrest citation, Myers slammed the teen's head into her bedroom floor three or four times injuring her daughter's forehead. She is also accused of placing her knee on the victim's neck causing visible injury and impeding her breathing.

58. Kimberly spent three days after her arrest in an overcrowded cell in the Franklin County Regional Jail, drinking melted ice from a cooler to try to stay hydrated.

*The Franklin District Court's Rebuke of Curtis' Case*

59. Curtis, Kimberly, and her adult daughter Celeste all testified at the preliminary hearing. Following the hearing, the Franklin District Court found that there was no probable cause for the felony Strangulation 1ˢᵗ Degree charge.

60. Following this, a suppression hearing was held. The Court made the following findings on the record:

> "First, I'm really bothered and concerned about the inconsistencies between former Detective Curtis's written citation, his testimony at the preliminary hearing, his testimony at the suppression hearing, and what the bodycam footage ultimately reveals. The bodycam evidence, of course, being the absolute best evidence of what really did in fact occur on July the 7th, '23.
>
> Mr. Curtis testified at the preliminary hearing that he attempted to speak with the alleged victim's sister, the one and only witness to the alleged assault and strangulation. But he said at that hearing that the defendant had refused his request to speak with that daughter. That's not what happened. In fact, that daughter was not even present at the residence that day. She was at work, the body cam footage reveals that, and after the Court heard from this one and only witness at the preliminary hearing, it became clear to me that there was no probable cause to charge the defendant with strangulation.
>
> Mr. Curtis also testified at the preliminary hearing that he did not enter the home until defendant yelled for her daughter and the child did not respond. Although on the bodycam footage you can hear the child responding to her mother's question, I guess just to say that, you asked her, 'are you okay?' At that point, Mr. Curtis said the defendant actually tried to shut the door. This is also not true.
>
> The citation was not accurate. The testimony was not accurate. The body cam footage instead shows Mr. Curtis barging through the front door, eventually forcing himself entirely into the residence, placing his hands on the defendant, twisting her arm backward, and immediately instructing the accompanying uniformed officer to handcuff

her after she merely asked him if he had a warrant to enter her home. The defendant never stood in the way of law enforcement. She merely stood behind the door, and the reason for that is because she was only wearing a towel at that time. She had just gotten out of the shower.

The entry into her home was so forceful that EMS was called to possibly render aid to the defendant because I think she had an injured foot after the door slammed into her foot. And then former Detective Curtis, referring to his entry into the home without a search warrant, flippantly stated to the defendant, 'Hey, if it's illegal, file a lawsuit.'

. . .

So, this court absolutely disagrees that there was any objectively reasonable basis to enter the defendant's home without a search warrant. I don't believe that any reasonable officer facing the same factual scenario would have thought that any person was in danger in that home or in need of immediate medical assistance, thereby believing that exigent circumstances would have applied to justify entry. There are no other exigent circumstances either.

…

This is law school 101. This is the textbook example of the definition of what constitutes an unlawful entry into a person's home. After reviewing the bodycam footage multiple times thinking surely to goodness I had missed something, it instead became glaringly apparent to me that Mr. Curtis had zero respect for the Constitution for which he took an oath and swore to uphold. And quite frankly, I was appalled. I've never seen a video like that. I was appalled by the arrogance, and I was incredibly disappointed.

The Court's also concerned about the testimony that after speaking with the alleged victim and her having supposedly disclosed what led up to the altercation, that he was afraid that alleged abuse would escalate, I guess providing justification for the arrest of the defendant. Our judicial system does not operate under what could or might happen. Rather, we seek the truth of what actually did happen. And typically, when all parties seek the truth, justice is ultimately served. So your motion to suppress is granted. All

—11—

evidence obtained as a result of the unlawful entry will be suppressed."

61. As a consequence of Curtis' intentional misrepresentations, Kimberly's charges were not dropped until April 16, 2024.

*The Frankfort Police Department Continued to Enable Curtis*

62. The Frankfort Police Department was aware of Curtis' misconduct and permitted him to continue in that pattern of misconduct without any correction or training.

63. The Frankfort Police Department also purposefully mishandled complaints related to Curtis—all while expressing significant concern internally—and displayed a false external picture of Curtis as a crime fighter and "very good" officer.

64. To support this image, the Frankfort Police Department continued to give Curtis additional responsibilities and assign him to higher stakes cases.

65. On August 3, 2023, Curtis' direct supervisor sent a memorandum to his supervisor to summarize some of the misconduct he perceived, stating:

> "[I]t is possible that Detective Curtis may need assistance or professional guidance of a psychological nature to correct the issues, but it may also be appropriate for higher disciplinary action to be taken. In either case that is a decision that has now reached a level that is beyond my scope of authority."

66. On August 30, 2023, Curtis resigned from the Frankfort Police Department.

67. Following his resignation, Curtis found employment with the Boyle County Sheriff's Office. According to the Employment History Check found within Boyle County Sheriff's Office records, the Frankfort Police Department rated his performance as "very good." It further stated that Curtis was "honest and reliable," that he is "well-tempered," and that he had never been disciplined.

68. Further according to the Employment History Check, the Frankfort Police Department stated that they would consider rehiring Curtis.

69. Not long after being hired by the Boyle County Sheriff's Office, Curtis repeated the pattern of misconduct that he exhibited both in Georgetown and Frankfort, and he was fired.

## COUNT I

**42 U.S.C. § 1983—Retaliation in Violation of the First Amendment of the United States Constitution**

*As to Defendant Larry G. Curtis*

70. Plaintiff incorporates by reference the allegations in preceding paragraph in the Complaint.

71.  42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

72. Defendant Curtis is a "person" for the purposes of 42 U.S.C. § 1983.

73. Defendant Curtis at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer.

74. Defendant Curtis retaliated against Plaintiff and violated her constitutional rights by using excessive force and arresting her for asking him if he had a warrant to enter her home.

75. Plaintiff was engaged in clearly protected speech.

76. Defendant Curtis took retaliatory action against Plaintiff that adversely affected her constitutionally protected speech when he illegally entered her home and arrested her.

77. Defendant Curtis' actions were directly motivated by Plaintiff's speech.

78. As a direct and proximate result of Defendant Curtis' conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

79. Because Defendant Curtis' actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT II

### 42 U.S.C. § 1983—Violation of the Fourth Amendment of the United States Constitution
*As to Defendant Larry G. Curtis*

80. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

81. Defendant Curtis at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer.

82. Defendant Curtis violated Plaintiff's constitutional rights by unlawfully entering her home, unlawfully seizing Plaintiff, and using excessive force against her.

83. Defendant Curtis' actions were not in good-faith and were in violation of clearly established law.

—14—

84. As a direct and proximate result of Defendant Curtis' conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

85. Because Defendant Curtis' actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT III
### 42 U.S.C. § 1983—*Monell* Liability
*As to all Defendants*

86. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

87. The treatment of Plaintiff by Defendants was the result of customs and practices of Defendants that are contrary to or expressly violate common standards, policies, procedures, or protocols, and such customs and practices were the "moving force" behind Plaintiff's injury. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate, and unreasonable disregard for an indifference to the constitutional and common law right of persons like Plaintiff, and the wholesale violations of those rights likely to result from the regular and systemic pursuit of such customs and practices.

88. Defendants have a custom, pattern, practice, and/or procedure of ratifying Curtis' unconstitutional acts and assisting in covering up the officer's bad actions.

89. As a direct and proximate result of Defendants' customs, patterns, practices, and/or procedures, the Plaintiff's rights guaranteed to her by the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution were violated.

90. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), the City of Frankfort and the Frankfort Police Department Chief Dustin Bowman, are liable for the harms and losses sustained by Plaintiff.

91. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

92. Because Defendants' actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT IV

### Battery
*As to Defendant Larry G. Curtis*

93. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

94. Defendant Curtis, with intent and apparent ability to act, committed a harmful and offensive touching to the Plaintiff without the privilege or authority to do so when he slammed the door against Kimberly's body and twisted her arm behind her back.

95. Defendant Curtis' conduct caused physical injury to Kimberly that resulted in EMS response.

96. As a direct and proximate result of Defendant's unreasonable and unlawful actions, Kimberly has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT V

### Malicious Prosecution
*As to Defendant Larry G. Curtis*

97. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

98. Defendant Curtis intentionally and maliciously initiated criminal proceedings against the Plaintiff based on the arrest that occurred on July 7, 2023.

99. The criminal proceedings were dismissed in the Plaintiff's favor.

100. No probable cause existed to charge the Plaintiff with the aforementioned criminal charges. Specifically, the Franklin District Court found that there was no probable cause for the sole felony count of Strangulation First Degree.

101. As a consequence of Defendant's conduct, Plaintiff has suffered substantial mental pain and suffering, an unjustified deprivation of her liberty, and a criminal prosecution that Defendant maliciously initiated and continued. Plaintiff is entitled to recover from Defendant the actual monetary damages required to compensate her for mental pain and suffering, the loss of her liberty, and the expenses, inconvenience and distress she experienced in the course and as a consequence of her criminal prosecution.

102. As a direct and proximate result of Defendant Curtis' intentional and unlawful conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not

limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT VI

### False Arrest/False Imprisonment
*As to Defendant Larry G. Curtis*

103. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

104. On July 7, 2023, the Plaintiff was taken into custody by Defendant Curtis, and she was wrongfully and unlawfully lodged in the Franklin County Regional Jail.

105. The arrest by Defendant Curtis intentionally and/or willfully confined the Plaintiff, contrary to her will, and without authority of law, in a manner sufficient to interfere with her liberty.

106. Due to the unlawful detention, the Plaintiff was humiliated, frightened, shamed, and stripped of her dignity.

107. As a direct and proximate result of Defendant Curtis' intentional and unlawful conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT VII

### Negligent Supervision
*As to Defendants City of Frankfort and Dustin Bowman*

108. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

109. Defendant Curtis's omissions and actions were intentional, wanton, reckless, and/or negligent, and occurred within the scope of his employment as a Frankfort Police Department Officer.

110. At all relevant times herein, Defendant Curtis was operating as an employee, agent, servant and/or apparent agent of Defendant City of Frankfort and Defendant Bowman.

111. Defendant City of Frankfort and Defendant Bowman had a duty to supervise and oversee all work done by Defendant Curtis by virtue of his employment and/or agency.

112. Defendant City of Frankfort and Defendant Bowman were intentional, wanton, reckless, careless, and/or negligent in failing to oversee Defendant Curtis's actions conducted within the course and scope of his employment and/or agency.

113. Due to this lack of supervision by Defendant City of Frankfort and Defendant Bowman, Defendant Curtis unlawfully entered Kimberly's home, assaulted her, and arrested her without probable cause and in violation of her Constitutional rights.

114. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT VIII

### Defamation

*As to Defendant Larry G. Curtis*

115. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

116. Defendant Curtis intentionally made false, defamatory, and slanderous accusations against the Plaintiff, causing embarrassment, humiliation, and mental distress to her damage and detriment.

117. Defendant Curtis wrote allegations that were published publicly at the time of the Plaintiff's arrest.

118. Those defamatory statements are false and disparaging on their face.

119. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT IX

### Intentional Infliction of Emotional Distress
*As to Defendant Larry G. Curtis*

120. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

121. Defendant Curtis's conduct as set forth hereinabove was either intentional or reckless.

122. Defendant Curtis's conduct is intolerable and offends the generally accepted standards of decency and morality in the community.

123. Such conduct would be considered outrageous, and such conduct was a substantial factor in causing serious and extreme physical, emotional, and psychological injuries and damages to the Plaintiff.

124. Defendant's conduct has resulted in Kimberly experiencing emotional and psychological injuries, including mental anguish, trauma, nightmares, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses. Due to these injuries, Kimberly has received treatment in the form

of anti-anxiety medication, individual therapy, family therapy, and trauma therapy.

125. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT X

### Punitive Damages
*As to all Defendants*

126. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

127. Defendants have been sued prior and settled for substantially similar misconduct. Defendants caused this to happen again to another Frankfort resident, and they show no resolve to prevent such unlawful behavior.

128. Plaintiff seeks punitive damages as to all counts and wherever permitted by law to punish Defendants and deter any repetition of the mistreatment to which Plaintiff was subjected.


WHEREFORE, the Plaintiff respectfully requests trial by jury, an award of actual and punitive damages, costs and attorney's fees pursuant to 42 U.S.C. §1988, interest on all such sums at the maximum legal rate until paid, and all other relief to which she is entitled.


Respectfully submitted,

 /s/ Patrick Brennan
Patrick Brennan
Eric Branco

Johnson Branco & Brennan, LLP
326 West Main Street
Frankfort, Kentucky 40601
Phone: 502-605-6100
E-mail: patrick@jbbfirm.com
Email: eric@jbbfirm.com
*Counsel for Plaintiff*